IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, JUDGE

Civil Case No.  12-cv-00184-LTB

TED RALL,

            Plaintiff,

v.

AETNA LIFE INSURANCE COMPANY,

            Defendant.

_____

## ORDER
_____

        This matter is before me on a Motion for Judgment on the Administrative Record filed by

Plaintiff Ted Rall [**Doc # 26**] and a [Cross-]Motion for Determination based on Administrative

Record filed by Defendant Aetna Life Insurance Company ("Aetna") [**Doc #44**].  These motions

have been briefed, and the administrative record has been filed.  Oral argument would not

materially aid in my determination.  For the reasons stated below, I DENY Plaintiff's motion, I

GRANT Aetna's motion and, as a result, I ENTER judgment in favor of Aetna and against

Plaintiff.

## I. BACKGROUND

        Plaintiff is a former employee at the Teachers Insurance and Annuity Association of

America ("TIAA").  Plaintiff was employed at TIAA as a customer service representative, until

February 21, 2011, when he stopped working following an incident of explosive outburst at

work.

TIAA has established a group disability plan, effective January 1, 2011, known as the "Teachers Insurance and Annuity Association of America Benefit Plan" ("the Plan"). The Plan is an employee welfare benefit plan – governed by the Employee Retirement Income and Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* – that provides benefits to eligible employees with a "disability," as defined therein. It is undisputed that Plaintiff is an eligible employee under the Plan. To fund the Plan, TIAA purchased group insurance policy (Number GP-660377) from Aetna and TIAA has given the discretionary decision-making authority to determine eligibility for benefits to Aetna.

Following the February 2011 episode at work, Plaintiff sought and received short term disability (or "STD") benefits from Aetna under the Plan. However, his subsequent request for long term disability benefits (or "LTD") was denied. After exhausting his administrative remedies with regard to this denial, Plaintiff filed this lawsuit, pursuant to 29 U.S.C. § 1132(a)(1)(B), seeking review of Aetna's denial of his application for long term disability benefits.

Aetna filed its Administrative Record with this court [Doc #20] which is consecutively numbered by Bate Stamp Numbers AETNA 000001 through AETNA 00720. Plaintiff relies on the same documents and, as such, I cite to the record via AETNA Bates Stamp Number in this Order.

## II. PLAN PROVISIONS

The Plan provides employees with both short term benefits and long term benefits if they become disabled by illness, injury, or a disabling pregnancy-related condition as determined by Aetna. [AETNA 000002-13, 000236-332, Doc # 26, Ex. 1]   In order to be eligible for short term

2

disability benefits, the Plan provides that:

> You are Disabled from you Own Occupation, if, as a result of Physical Disease, Injury, Pregnancy or Mental Disorder, you are unable to perform the Material Duties of your Own Occupation . . . [AETNA 000005]

The Plan also provides for long term disability benefits, and indicates as follows:

> You will be considered disabled while covered under the Long Term Disability (LTD) Plan on the first day that you are disabled as a direct result of a significant change in your physical or mental conditions and you meet all of the following requirements:  [you must be covered, you must be under the care of a physician, and] you must be disabled by the illness, injury, or disabling pregnancy-related condition as determined by Aetna (see Test of Disability).  [AETNA 000243]

Long Term Disability coverage is limited by the Plan to twenty-four (24) months for a disability

caused or contributed to by Mental Disorders, which is defined as:

> any mental, emotional, behavioral, psychological, personality, cognitive, mood or stress-related abnormality, disorder, disturbance, dysfunction or syndrome, regardless of the cause . . . or the presence of physical symptoms.  Mental Disorders include, but is not limited to, bipolar affective disorder, schizophrenia, psychotic illness, manic depressive illness, depression and depressive disorder, anxiety and anxiety disorders. [AETNA 000246]

The Plan continues – in pertinent part – that:

> You will no longer be considered as disabled nor eligible for long term monthly benefits when the first of the following occurs: [. . .] The date you no longer meet the LTD test of disability, as determined by Aetna. [ . . .]  The date you fail to provide proof that you meet the LTD test of disability [defined as the inability to "perform the material duties of your own occupation solely because of an illness, injury or disabling pregnancy-related condition"]. [AETNA 000244-5]

Finally, the Plan requires that:

> Your claim must give proof of the nature and extent of the loss. You must furnish true and correct information as Aetna may reasonably request. At any time, Aetna may require copies of documents to support your claim, including data about employment. You must also provide Aetna with authorizations to allow it to investigate your claim and your eligibility for and the amount of work earnings and other income benefits. [AETNA 000256]

3

## III.  ADMINISTRATIVE RECORD

While at work on February 21, 2011, Plaintiff contends that he "decompensated due to a perception of extreme negativity and stress in the workplace and . . . walked out of the workplace in the middle of the workday in a suicidal state."  Plaintiff asserts that he suffers from the following diagnoses:  a Generalized Anxiety Disorder, Major Depressive Disorder and Intermittent Exposure Disorder.

Short Term Disability Benefits

On February 22, 2011, Plaintiff submitted an application to Aetna seeking short-term disability benefits under the Plan. [AETNA 000124]  During the short-term disability process, Aetna arranged for a physician review by psychologist Dr. Leonard Schnur. [AETNA 000205-8, Doc # 26, Ex. 8]  His report – dated July 13, 2011 – sought to determine if Plaintiff had a psychological impairment that would preclude him from performing the work of his own occupation for the time period of June 16 though August 28, 2011. [AETNA 000206]

In his report, Dr. Schnur first noted that prior to the time of consideration, psychologist Dr. Larry J. Pugel performed a mental health assessment, in December 2010, indicating that Plaintiff presented as an emotionally and psychologically troubled individual, and was diagnosed with Major Depressive Disorder, Generalized Anxiety Disorder, partner relational problems, occupational problems, and a possible diagnosis of intermittent Explosive Disorder, as well as a note of risk for potential self harm. [AETNA 000206, Doc # 26, Ex. 9]  Dr. Schnur also noted a prior Behavioral Health Clinician Statement by Plaintiff's Licensed Professional Counselor Lori L. Frey, dated April 26, 2011, which indicated a diagnosis of Major Depressive Disorder with a GAF of 40, and that he was "psychologically unstable with an anticipated relapse if [Plaintiff]

returned to work." [AETNA 000206]

Dr. Schnur indicated that the only documentation submitted for the time period under review, however, was Ms. Frey's Behavioral Health Clinician statement dated July 2, 2011 (for an exam on June 24, 2011) which provided a diagnosis of Major Depressive Disorder and intermittent Explosive Disorder, and indicated that Plaintiff "was unable to work currently and should he return to work at some point, [Plaintiff] should not return to a customer service capacity." [AETNA 000206-7]  Based on this documentation, Dr. Schnur opined that there were examination findings to substantiate a functional impairment – for the time period of June 16 through July 16, 2011 – which would preclude Plaintiff from performing the work of his own occupation.  However, because Dr. Schnur was unable to speak directly to Ms. Frey at that time, he noted that "a functional impairment could not be substantiated beyond [July 16, 2011]." [AETNA 000207]  Aetna subsequently granted Plaintiff's request for short term disability benefits – for the maximum 26 weeks – through to August 31, 2011.  [AETNA 000209, 000225, Doc # 26, Ex. 12]

Long Term Disability Benefits

After the exhaustion of his available short-term disability benefits, Aetna transferred Plaintiff's claim to the long-term disability benefits department. [AETNA 000363-64]  At that time, on August 30, 2011, Aetna sent Plaintiff a letter asking that he complete a number of enclosed forms, and that he return them within thirty-days.  The letter also informed Plaintiff that "[c]ertification of your Short-Term Disability does not guarantee payment of LTD benefits." [AETNA 000496-7]

On September 1, 2011, Erica Vargo, an Aetna Senior LTD Benefit Manager, entered a

claim note in Plaintiff's file indicating as follows:

> ASSESSMENT: EE [employee] 44 year old male IND consultant claiming
> disability due to Major Depression. Medical support impairment from an M&N
> [mental and nervousness] perspective through 9/30/2011; EE gets angry frustrated
> defensive and loud when challenged and is unable to complete his thoughts; he is
> unpredictable around stress and sometime does not believe his anger is an issue.
> Per LPC [licensed professional counselor – Ms. Frey], intermittent explosive
> disorder applies. Reasonable EE cannot perform the skills required of his job as it
> requires ability to think clearly and interact with customers on sensitive and
> complex issues. [AETNA 000366]

On September 2, 2011 Ms. Frey, sent Aetna a facsimile, which provided her opinion that

Plaintiff:

> decompensated due to a perception of extreme negativity and stress in the
> workplace and on February 21, 2011 he walked out of the workplace in the
> middle of the workday in a suicidal state. Effective February 21, 2011, [Plaintiff]
> has been on psychological leave from the workplace, during which time he has
> been under my care. It is my clinical opinion that [Plaintiff's] psychological
> functioning precludes him from returning to customer service work and that he
> should be placed on long-term, if not permanent, disability from the workplace.
> [AETNA 000234, Doc #26, Ex. 7]

On September 13, 2011, Ms. Vargo contacted Plaintiff via telephone, who gave Aetna

permission to talk directly with Ms. Frey.  Ms. Vargo's notes from the conversation indicate that

she told Plaintiff that this "may or may not be enough information to make a decision on his

[LTD] claim." [AETNA 000378]  Ms. Vargo then sent Plaintiff an authorization for release of

medical record information, and advised him that "without necessary medical documentation to

support your treating providers' recommendation of no work, we may be unable to appropriately

assess your claim which could result in an adverse decision." [AETNA 000560]

On September 30, 2011, Dr. Elishia Oliva provided Aetna Plaintiff's treatment records, which indicate she saw him once on May 3, 2011, and once on July 6, 2011. [AETNA 000603-614]  The treatment records from Dr. Oliva's last visit with Plaintiff, in July 2011, indicate the following observations:

> Patient presents today alert and oriented to person, place and full date.
> Attention and concentration were appropriate for the interview.
> Attitude was appropriate, they were pleasant and cooperative.
> There was no abnormality in psychomotor activity.
> Eye contact was appropriate.
> Speech was with normal rate, normal volume, articulation, latency and spontaneity and language was normal
> Mood was described by the patient as "all right"
> Affect was restricted
> Content of Thought was without any suicidal or homicidal ideations, thoughts of aggression or self harm. There was no evidence of delusions, overvalued ideas, obsessions, phobias and preoccupations.
>
> Perceptions: There was no evidence of auditory, visual or other hallucinations. Thought process was with normal flow of thought. There was no evidence for flight of ideas, retarded or inhibited thinking or poverty of thought process. There was no evidence of a formal thought disorder as thought process was organized with no evidence of thought blocking, loosening of associations, tangential thinking or derailment of thought. There was no evidence of circumstantial thought or perseveration. Insight is fair but he is resistant to medications. Judgment for daily activities and social situations is currently appropriate. [AETNA 000604-5]

Dr. Oliva did not opine as to Plaintiff's ability to work.

A behavioral health clinician with Aetna, Laura Sue Howitt, spoke with Ms. Frey on September 30, 2011.  The notes from that conversation state that:

> Provider indicates that EE does well in a sheltered environment meaning he can be calm when home without stress.  Provider indicates anger issues, dx: intermittent explosive disorder.  Provider indicates concerns that when in stressful environment, will become easily angry, which could escalate to being physically aggressive. EE had kicked the dog when angry.  EE reports having impulsive thoughts of wanting to hurt others.  No reports of being physically aggressive towards wife and children.  However, provider has a safety plan in place with the

wife that if he is not able to handle being around the children than [sic] she would take over the taking care of the children.  EE has impulsive thoughts of wanting to hurt others at work environment.  Provider indicates it is a negative work environment, does not like to talk to the customers, and if have [sic] to deny with customers and had difficulties dealing with the customers if they get angry at him.  EE has history of becoming angry when in social situation, history of getting into fights with others at bars.  EE has exhibited road rage, but has been able to stop and let wife drive.

Provider indicates that depression is under control with the Celexa.  No other medications, but has recommended Lexapro but states insurance will not cover.  No reported homicidal ideation but has history of threatening others.  It is reported EE has passive suicidal ideation based on test given, no current plan/intent, and has safety contract with provider.  There are safety resources in place. EE has history of walking out of work and stating that he would hurt himself. [AETNA 000395]

No current domestic violence incidents
EE reports that the work situation makes him angry
Provider indicated that EE could work in a different environment if would not have to interact with customers, more isolative environment.
Provider did not give RTW date, stating that EE can not return to the same work environment
No reported cognitive impairments, memory is intact
No reported panic attacks, anxiety is under control
Provider indicates poor sleep, insomnia, has recommended sleep study.  No appetite disturbance.  EE lacks motivation, does not do anything around the house.  Adl's are appropriate.
No delusions or hallucinations are reported
EE is seen biweekly by therapist.
No medical issues.  [AETNA 000396]

After speaking with Ms. Frey, Ms. Howitt concluded that a disability determination was

"not supported."  The rationale for her decision was stated in her notes as follows:

Clinical documentation was submitted in the form of a telephone review with Lori Frey/LPC dated 9-30-11. The clinical information submitted is not sufficient to substantiate out of work status. There are no significant cognitive, emotional, or behavioral impairments to substantiate out of work status. In addition, it appear there are work related issues. [AETNA 000397]

On October 17, 2011, Aetna sent a letter to Plaintiff informing him that "[t]he information we have been able to obtain (telephone contact with your counselor and medical records from your Psychiatrist) were not sufficient to support disability as defined by your plan." The letter went on to indicate that "we are providing you until October 28, 2011 to provide any new additional information to support your claim" and "[i]f we do not receive any new additional information by October 28, 2011, a decision will be made based on the information contained in your file at that time."  In addition, the letter advised Plaintiff of the following outstanding requested information: 1) Authorization for Release of Medical Information; and 2) Medical records from your treating Counselor, Lori Frey, for the period of 2/21/2011 through current.  [AETNA 000615-16]

On the day before the deadline, Plaintiff mailed to Aetna a signed Authorization for Release of Medical Information and several pages of handwritten therapy notes from Ms. Frey. [AETNA000561-601]  The October 28th deadline had passed, however, before Aetna received these from Plaintiff.   As a result, Aetna sent Plaintiff a second letter denying his request for long term disability benefits, on October 31, 2011, without consideration of this newly submitted information.  This letter again indicated that "[t]he medical information is not sufficient to support a functional impairment to substantiate out of work status. There are no cognitive, emotional, or behavioral impairments which would preclude you from performing the core duties of your own occupation . . . ".  [AETNA 000625-28]

On November 9, 2011, Plaintiff submitted a request for administrative appeal.  [AETNA 000689]  Aetna then retained Dr. Elana Mendelssohn, a psychologist, to review Plaintiff's records and to perform at peer-to-peer review with Ms. Frey. [AETNA 000702, Doc # 26, Ex.

10]   In her report, dated December 27, 2011, Dr. Mendelssohn indicated that Ms. Frey's opinion

was that Plaintiff "was unpredictable around others when under stress" and that he "was unable

to return to customer service." [AETNA 000702-8]  Dr. Mendelssohn further noted that "[i]n

contrast to Ms. Frey's indication that [Plaintiff] had difficulty finishing his thoughts, Dr. Oliva

did not indicate this observation as present during her appointment with [Plaintiff]."  Moreover,

"[t]here was no indication within this note from Dr. Oliva that she was recommending time off

work. " [AETNA 000701]

        After reviewing all medical evidence provided by Plaintiff and completing the

peer-to-peer review with Ms. Frey on December 23, 2011, Dr. Mendelssohn opined as follows:

> The claimant has been seen infrequently by a psychiatrist [Dr. Oliva] whose
> documentation did not indicate recommendation for time off work. Additionally,
> there was no indication that the claimant has been seen by this treating
> psychiatrist since July of 2011. Yet, the claimant has consistently attended
> psychotherapy with his treating psychotherapist [Ms. Frey].  Although this
> provider has opined that the claimant could not return to his former position in
> customer service, it is my
> opinion the provided information did not include specific clinical findings or
> behavioral observations documenting impairment in psychological functioning.
> Although the documentation from the psychotherapist indicates reports of anger
> and unpredictability related to stress, it is my opinion that the claimant's clinical
> presentation is reflective of longstanding personality characteristics. The claimant
> himself indicated in documentation multiple instances of anger issues and low
> frustration tolerance dating back to at least his college years. Additionally, the
> claimant's treating therapist had indicated . . . that the claimant's symptoms
> reflected a genetic component.  While a position in customer service may tap the
> claimant's weaknesses related to his personality and interpersonal difficulties, it is
> my opinion the information did not substantiate the presence of impairment in
> functioning. Again, it is my opinion that the claimant's presentation is reflective
> of longstanding traits and therefore the information does not support the presence
> of decline in functioning reflective of impairment from a psychological
> perspective from 8/20/11 through 12/13/11. [AETNA 000701]

        On December 30, 2011, Plaintiff sent AETNA a handwritten list of three prescription

medications he was taking – Citaloprom, Flutirasone (sic?) and Risperidone/Risperdal – and a

10

medical record/office note dated December of 2011, that indicated his Risperdal was increased to 0.25 mg in the morning and 0.5 mg at night. [AETNA 000707-08, Doc # 26, Ex. 18]

On January 11, 2012, Aetna upheld the original denial of Plaintiff's long term benefits claim. [AETNA 000718-20]  In so doing, Aetna indicated that it reviewed the following documentation and resulting findings:  the prior review by Dr. Leonard Schnur; Letter of Appeal; Authorizations; Letter from Lori Frey, LPC dated September 2, 2011; Three Behavioral Health Clinician Statements from Lori Frey, LPC, dated March, April and July 2011; Office notes and telephone records from March through November 2011; and a Mental Health Assessment from Lori Frey, LPC dated January 14, 2011.  In addition, "your file was reviewed by an independent peer physician who specializes in Psychology."  After setting forth Dr. Mendelssohn's findings and conclusions, Aetna indicated that "[b]ased upon our review of the submitted documentation, and the rationale detailed therein, we have determined that there was insufficient medical evidence to support your disability, as of August 20, 2011." [AETNA 000719]  Thereafter, Plaintiff filed this lawsuit, on January 24, 2012, seeking review of Aetna's denial pursuant to 29 U.S.C. §1132(a)(1)(B).

## IV. STANDARD OF REVIEW

In a denial-of-benefits case such as this, where the ERISA plan confers upon the plan administrator discretionary authority to determine eligibility for benefits, "a deferential standard of review is appropriate."  *Foster v. PPG Industries, Inc.,* 693 F.3d 1226, 1231 (10th Cir. 2012) (*quoting Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008)).  As a result, courts review the administrator's decision for abuse of discretion, or apply an arbitrary and capricious standard, which are deemed "interchangeable in this context."  *Foster*

*v. PPG Indust., supra,* 693 F.3d at 1231 (citation omitted).

In determining whether a decision is arbitrary and capricious, "[t]he Administrator's decision need not be the only logical one nor even the best one.  It need only be sufficiently supported by facts within his knowledge to counter a claim that it was arbitrary or capricious. The decision will be upheld unless it is not grounded on any reasonable basis." *Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999)(noting that a "reviewing court need only assure that the administrator's decision falls somewhere on a continuum of reasonableness – even if on the low end")(citations omitted).

### V. CONFLICT OF INTEREST

I first address Plaintiff's argument that Aetna's denial of his long term disability claim was arbitrary and capricious because it was inappropriately influenced by a conflict of interest.

When a plan administrator acts in a dual role – i.e., both evaluating and paying claims – it is operating under a conflict of interest.  *Foster v. PPG Indust., supra,* 693 F.3d at 1232 (*citing Metro. Life Ins. v. Glenn, supra*, 554 U.S. at 112).  The conflict arises from the administrator's dual role as:  (1) a fiduciary, in which it may favor granting a borderline claim, and (2) an administrator whose financial interest would counsel against granting borderline claims.  *See Metro. Life Ins. Co. v. Glenn, supra*, 554 U.S. at 111.

Rather than viewing a conflict of interest as presumptive evidence that the plan administrator's decision was arbitrary and capricious, however, courts are to apply "a combination-of-factors method of review that allows judges to take account of several different, often case-specific, factors, reaching a result by weighing all together."  *Foster v. PPG Indust., supra,* 693 F.3d at 1231 (*quoting Holcomb v. Unum Life Ins. Co. of America*, 578 F.3d 1187,

1193 (10th Cir. 2009)); *see also Murphy v. Deloitte & Touche Grp. Ins. Plan*, 619 F.3d 1151,

1157 N. 1 (10th Cir. 2010)(ruling that courts are to "weigh the conflict of interest as a factor in

our abuse of discretion analysis, and we will weigh it more or less heavily depending on the

seriousness of the conflict"). "[A]ny one factor will act as a tiebreaker when the other factors are

closely balanced, the degree of closeness necessary depending upon the tiebreaking factor's

inherent or case-specific importance." *Hancock v. Metropolitan Life Ins. Co.,* 590 F.3d 1141,

1155 (10th Cir. 2009)(*quoting Metro. Life Ins. v. Glenn*, *supra*, 554 U.S. at 117).

It is undisputed that TIAA has funded the Plan by purchasing an insurance policy from

Aetna, and that it has appointed Aetna as its plan administrator to determine eligibility on the

benefits it will or will not pay; therefore, a conflict of interest exists.  Plaintiff argues that this

conflict of interest influenced Aetna's decision in his case, as evidenced by its failure to award

him long term benefits – based on insufficient medical evidence to support a finding of disabled

– after initially determining that there was evidence to find him disabled during the short term

disability period.  However, I agree with Aetna that the approval of short term disability benefits

does not guarantee or otherwise indicate proof of entitlement to the award of long term disability

benefits.  The Plan does not contemplate as such, and Plaintiff was clearly informed that he

would have to provide sufficient evidence of his disability – in the long term benefits

determination – because certification of his short-term disability did "not guarantee payment of

LTD benefits." [AETNA 000496-7]

Plaintiff also argues that Aetna's conflict of interest influenced the determination of his

request for long term disability benefits, in that it denied his claim despite a finding that he was

disabled at the beginning of the long term disability process.  Specifically, Plaintiff refers to the

claim note in the file, made by Ms. Vargo on September 1, 2011, which indicated that her assessment was that there was "[m]edical support impairment from an M&N [mental and nervousness] perspective through 9/30/2011" and that a "[r]easonable EE cannot perform the skills required of his job as it requires ability to think clearly and interact with customers on sensitive and complex issues." [AETNA 00366]  Plaintiff argues that this note constitutes a conclusion or determination by Aetna that he was disabled at least through September 20, 2011 (a month after the end of the short term disability period).

However, I disagree that Ms. Varga's notation – without more in the record – evidences a determination by Aetna that Plaintiff had established that he was disabled after his short term disability benefits had expired.  It is clear that Aetna did not make an affirmative determination on Plaintiff's eligibility for long term benefits at that time, as the only basis for such would have been the short term disability determination and the one-page facsimile sent by Ms. Frey.  I note that at the time of the notation no other records had been provided, medical authorizations and other forms had not yet been returned by Plaintiff, and the lack of documentation was noted by Ms. Vargo directly after this note which could equally be construed to be a summary or recitation of Plaintiff's short term benefits claim.

Finally, I reject Plaintiff's argument to the extent that he contends Aetna's bias is evidenced by its failure to obtain a medical review of his file before issuing its initial denial of long term benefits in October 2011.  Plaintiff has provided me with no authority for such requirement.  More importantly, the basis for Aetna's denial was that the limited information it had obtained at this time – telephone contact with Ms. Frey and medical records from two visits with Dr. Oliva during the short term disability period – were not sufficient to establish disability

and, moreover, that Plaintiff had not yet provided a signed authorization for release of medical information or any medical records from Ms. Frey.

As a result, Plaintiff has provided me with no evidence of the presence of any bias beyond Aetna's inherent conflict in its dual role of both evaluating and paying claims.  I note that he makes no allegation of improper incentives – either internally or to third party consultants, doctors and reviewers – or a history or proof of a pattern or practice of unreasonably denying meritorious claims.  *See Metro. Life Ins. v. Glenn*, *supra*, 554 U.S. at 122.  Rather, the record is replete with evidence that Aetna took active steps to promote accuracy by providing Plaintiff with numerous opportunities to supplement the medical evidence before them.

As such, while the conflict of interest here triggers a less deferential standard of review, I afford Aetna's conflict of interest minimal weight as a factor in my abuse of discretion analysis. *See Hancock v. Metropolitan Life, supra,* 590 F.3d at 1155 (noting that when plan administrator or fiduciary operates under a conflict of interest, reviewing courts decrease deference in proportion to the seriousness of the conflict); *see also Metro Life Ins. v. Glenn, supra,* 554 U.S. at 122 (concluding that the circumstances did not suggest a higher likelihood that any purported conflict affected the benefits decision).

## VI.  SUBSTANTIAL EVIDENCE

Plaintiff's primary argument on appeal, therefore, is that the denial of his request for long term benefits under the Plan was arbitrary and capricious because it was not supported by substantial evidence.

"Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker."  *Caldwell v. Life Ins. Co. of N. Am.,*

287 F.3d 1276, 1282 (10th Cir. 2002)(*quoting Sandoval v. Aetna Life and Casualty Ins. Co.*, 967

F.2d 377, 382 (10th Cir.1992)).  Substantiality of the evidence is based upon the record as a

whole.  *Caldwell v. Life Ins. Co., supra*, 287 F.3d at 1282.  "In determining whether the evidence

in support of the administrator's decision is substantial, I take into account whatever in the

record fairly detracts from its weight."  *Id.* (*quoting Washington v. Shalala*, 37 F.3d 1437, 1439

(10th Cir. 1994)).  I again note that the decision "need not be the only logical one, nor even the

best one; [i]t need only be sufficiently supported by facts within his knowledge to counter a

claim that it was arbitrary or capricious."  *Finley v. Hewlett–Packard Co. Emp. Benefits Org.*

*Income Prot. Plan*, 379 F.3d 1168, 1179 (10th Cir. 2004).  As such, "[t]he decision will be

upheld unless it is not grounded on any reasonable basis."  *Id.* (*quoting Kimber v. Thiokol, supra*,

196 F.3d at 1098).

Plaintiff refers me to the following arguments in support of his assertion that Aetna's

decision that there was "insufficient medical evidence" to find that he was disabled, in order to

receive long term disability benefits, was arbitrary and capricious.  First, Plaintiff argues that

Aetna determined that he was disabled from performing his job during the short term disability

period – February through August of 2011 – and that the medical evidence after that

determination does not indicate that he was getting better and would be able to return to his job,

but rather shows a decline or worsening of his mental health.  Plaintiff further argues that the

medical records for the long term disability benefits period indicate that Ms. Frey continued to

opine that he could not return to work as a customer service representative, and that his mental

health did not improve to the point that he could return to customer service work despite that he

was compliant with his course of treatment and his prescription medication, including the

addition of an anti-psychotic medication.  In so doing, Plaintiff argues that Aetna does not

challenge: 1) his diagnoses – of a generalized anxiety disorder, major depressive disorder and

intermittent exposure disorder; or 2) Ms. Frey's consistent opinion that he cannot perform

customer service work; or 3) Dr. Schnur's concurring opinion, during the short term disability

period, that Plaintiff's psychiatric problems prohibited him from working in customer service.

The record is clear, however, that Aetna did not deny long term benefits to Plaintiff on

the basis that the medical evidence demonstrated that he was, in fact, able to perform his job in

light of his diagnosis, symptoms, and his job responsibilities.  Rather, at issue was whether there

was medical evidence in the records provided to Aetna to conclude that Plaintiff was disabled

following the period of his short term disability after August 2011.

The record reveals that although Plaintiff was found to be disabled in order to receive

short term disability benefits, that decision was based primarily on Dr. Schnur's opinion which,

in turn, was clearly limited to through July 16, 2011 only.  The subsequent long term disability

record consists of very limited documentation.  It is clear that Ms. Frey's opinion was that

Plaintiff could not perform his work as a customer service representative, as set forth in her one-

paragraph facsimile to Aetna, dated September 2, 2011.  This opinion failed to provide most of

the information sought on the appropriate Aetna form, and was not supported by any medical

records or further documentation.  When Aetna's behavioral health clinician, Ms. Howitt, spoke

with Ms. Frey on September 30, 2011, Ms. Frey again opined that Plaintiff could not return to

work as a customer service representative, but did not provide evidence of impairment that

would – in Ms. Howitt's view – substantiate his out of work status.  Although Ms. Frey indicated

that Plaintiff exhibited anger issues in stressful environment, which could escalate to being

physically aggressive  – he had a "history of becoming angry when in social situation, history of getting into fights with others at bars" and had "exhibited road rage" –  there were no reports of being physically aggressive towards his wife and children or of others at work.  Ms. Frey noted that Plaintiff reported a negative work environment where he had difficulties dealing with the customers if they got angry at him.  However, Ms. Frey further reported that Plaintiff's depression was under control with medication, and although testing has show "passive suicidal ideation," he had no current plan/intent and safety resources were in place.  Moreover, Ms. Frey indicated no current domestic violence incidents, no reported cognitive impairments, that his memory was intact, no reported panic attacks, his anxiety was under control, poor sleep/ insomnia, no appetite disturbance, lack of motivation, but activities of daily living were appropriate, and no delusions or hallucinations were reported.

Thereafter, the record reveals that Aetna continued to request information and forms from Plaintiff, including medical release authorizations, but that he either failed to provide the requested information or did so in an untimely manner.  Based on the lack of information to substantiate his claim – essentially only the telephone conversation with Ms. Frey – Aetna initially denied Plaintiff's request for long term disability benefits on October 17, 2011, and then again on October 31, 2011, after it received nothing further from Plaintiff.

Then, after Aetna received a signed medical authorization and some handwritten therapy notes from Plaintiff, as well as his request for review/appeal of the denial, Aetna hired Dr. Mendelssohn to review the records and the evidence in Plaintiff's case.  As stated more fully above, Dr. Mendelssohn understood Ms. Frey's opinion was that Plaintiff  "was unpredictable around others when under stress" and, as a result, he "was unable to return to customer service."

After noting inconsistent evidence about whether Plaintiff had difficulty finishing his thoughts, Dr. Mendelssohn also noted that he only saw his psychiatrist, Dr. Oliva, on a infrequent basis – and not since July of 2011 – and that she did not express an opinion about Plaintiff's ability to do his job.  As to Ms. Frey's opinion that Plaintiff could not return to his former position in customer service, Dr. Mendelssohn determined that the records "did not include specific clinical findings or behavioral observations documenting impairment in psychological functioning." While Ms. Frey did indicate "reports of anger and unpredictability related to stress," it was Dr. Mendelssohn's opinion that this was due to "longstanding personality characteristics."  As such, Dr. Mendelssohn concluded that although Plaintiff's customer service job may serve to trigger his longstanding personality and interpersonal difficulties, the records "did not substantiate the presence of impairment in functioning" and "does not support the presence of decline in functioning reflective of impairment from a psychological perspective from 8/20/11 through 12/13/11."  Aetna relied upon Dr. Mendelssohn's opinion when it subsequently denied Plaintiff's appeal and when it determined that "there was insufficient medical evidence to support your disability, as of August 20, 2011."

Plaintiff now challenges Dr. Mendelssohn's opinion on the basis that it is unreliable in that 1) she did not examine Plaintiff ; 2) she mis-characterized Plaintiff's records by concluding that Ms. Frey did not adequately note her clinical findings on her chart notes; and 3) she failed to ask Ms. Frey – in her peer-to-peer review – if Plaintiff was still exhibiting symptoms that were present at the time of his short term disability determination.  In addition, Plaintiff refers me to an unpublished order from the a District Court in Ohio, dated July 9, 2012, which rejected Aetna's reliance on several "flawed independent file reviews" as a basis for its denial of a claim,

including a report by Dr. Mendelssohn.  *See Stephens v. Aetna Life Ins. Co.,* 2012 WL 2711378

(S.D. Ohio 2012)(unpublished).  Specifically, the court found that: 1) Dr. Mendelssohn's

conclusion that the treating records did not contain objective findings was incorrect – in that they

were present in the form of checked boxes on the treating doctors' notes – and 2) Dr.

Mendelssohn's rejection of test results – on the basis that the treating physicians didn't indicate

whether the tests included validity measures – was flawed because validity was implicit in the

physicians' acceptance of the test results.  As a result, the court found that Aetna's reliance on

flawed independent file reviews, including Dr. Mendelssohn's, to deny a claim for long term

benefits was arbitrary and capricious.

  However, the defects criticized by the Ohio unpublished case are not present here.  Dr.

Mendelssohn's report opined that the medical records were insufficient to substantiate the

presence of impairment in functioning beyond Plaintiff's longstanding personality characteristics

and interpersonal difficulties, resulted in anger and unpredictability related to stress and, as such,

the records failed to support a of decline in psychological functioning through the relevant period

of August through December of 2011.  While Plaintiff argues that this report is defective to the

point that it is unreliable, I disagree.

  When deciding whether Aetna's decision was arbitrary and capricious, I am to assess

only whether it was grounded on any reasonable basis.  *See Kimber v. Thiokol*, *supra*, 196 F.3d

at 1098 (the administrator's decision need not be the only logical decision or the best decision,

so long as it is reasonable).  I conclude that, when viewing the record as a whole and in

consideration of the inherent conflict of interest present, Aetna's decision to deny Plaintiff's

request for long term disability benefits – on the basis that the medical evidence was insufficient

to find that he was disabled after August 30, 2011 – was based on substantial evidence that a reasonable mind could accept as adequate to support the conclusion reached.  Because I have determined that Aetna's denial was predicated on a reasoned basis, it will be upheld.  *See Caldwell v. Life Ins. Co., supra,* 287 F.3d at 1282.


ACCORDINGLY, for the forgoing reasons, I DENY the Motion for Judgment on the Administrative Record filed by Plaintiff Ted Rall [**Doc # 26**]; I GRANT the Motion for Determination based on Administrative Record filed by Defendant Aetna Life Insurance Company [**Doc #44**]; and, as a result, I ENTER JUDGMENT in favor of Defendant Aetna Life Insurance Company.


Dated: April   24 , 2013 in Denver, Colorado.

BY THE COURT:


    s/Lewis T. Babcock
LEWIS T. BABCOCK, JUDGE